# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

DEBRA L. DUNEGAN, )
)
Plaintiff, )
)
v. ) Case No. CIV-11-138-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## OPINION AND ORDER

Plaintiff Debra L. Dunegan (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on January 16, 1960 and was 50 years old at the time of the ALJ's decision. Claimant completed her high school education and is within one trimester of receiving her education as an administrative secretary. Claimant worked in the past as a

3

secretary, wiring harness maker, waitress, and boutique arranger. Claimant alleges an inability to work beginning January 23, 2008 due to limitations resulting from fibromyalgia, obstructive sleep apnea, degenerative disc disease, osteoarthritis, obesity, PTSD, major depression, and a personality disorder.

## Procedural History

On July 10, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 5, 2010, an administrative hearing was held before ALJ Lantz McClain in Tahlequah, Oklahoma. On May 12, 2010, the ALJ issued an unfavorable decision. On February 16, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a range of light work with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to perform a proper analysis at step five; and (2) engaging in a faulty credibility analysis.

## Step Five Analysis

Claimant first contends the ALJ failed to include all of her limitations in the hypothetical questions posed to the vocational expert employed to provide testimony in this case. In his decision, the ALJ found Claimant suffered from the severe impairments of fibromyalgia, obstructive sleep apnea, degenerative disc disease, osteoarthritis, obesity, posttraumatic stress disorder, major depression, and a personality disorder. (Tr. 19). He determined Claimant retained the RFC to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for at least 6 hours in an 8 hour workday, sit for at least 6 hours in an 8 hour workday, all with normal breaks, while avoiding work above shoulder level, limited to simple repetitive tasks, and having no more than incidental contact with the public. (Tr. 21). While the ALJ concluded Claimant could not perform her past relevant work, he found jobs existed in the national economy in sufficient numbers that Claimant could perform, given her RFC including mail clerk, maid, and hand packager. (Tr. 24). The ALJ,

5

therefore, concluded Claimant was not disabled. (Tr. 25).

On May 17, 2007, Claimant was evaluated by Dr. Jay K. Johnson. Dr. Johnson was asked to evaluate Claimant regarding cervical radiculopathy versus carpal tunnel syndrome. Claimant complained of no strength in both hands, an inability to walk in the morning when she gets up, and chronic joint pain in both the upper and lower extremities. (Tr. 267). Dr. Johnson's examination revealed symmetric strength in the upper and lower extremities with normal bulk and tone. The sensory exam revealed a grossly intact sensation to pin. Some patchy decreased sensation in the upper and lower extremities was noted which did not follow any particular dermatome or peripheral nerve pattern. (Tr. 268). Claimant's reflexes were 2/4 at the biceps, triceps, and brachioradialis. Patellars were 2.4 and Achilles were 2/4. Claimant's toes were downgoing. Dr. Johnson performed an EMG/NCV of the right and left upper extremity and the study was normal. (Tr. 269).

Dr. Johnson's impression was Claimant had numbness and tingling in the hands with uncertain etiology. Although she had pain in the neck and down the right arm, it did not appear that she had clinical or electrical evidence of carpal tunnel syndrome. He recommended Claimant have an MRI scan of the cervical spine. Id.

On June 11, 2007, Claimant underwent an MRI which was evaluated by Dr. Allan S. Fielding. The MRI showed some foraminal

stenosis at C6-7. Claimant was complaining of neck pain spreading to both of her shoulders but her arm pain was completely gone. Claimant had no sensory loss or weakness. (Tr. 277).

Upon examination, Dr. Fielding found the cervical foramen closure test was negative, Claimant's reflexes were trace, and she had full power and normal sensation. Claimant's neck was unremarkable to inspection but she had some paracervical muscular tenderness. X-rays revealed some foraminal stenosis, mild at C6-7, more on the right than on the left. (Tr. 277). Dr. Fielding concluded that Claimant had neck pain exclusively that was resolving but no arm pain. He recommended taking no action but to "simply wait this out and give things time to resolve." He advised that over-the-counter medications should be administered if something is needed for pain. (Tr. 278).

On October 10, 2008, Dr. Hannah Swallow completed a Mental Residual Functional Capacity Assessment form on Claimant. Dr. Swallow found Claimant was markedly limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. (Tr. 623-24). She also determined Claimant was moderately limited in the area of the ability to work in coordination with or proximity to others without being distracted by them. (Tr. 623). In her narrative of

Claimant's functional capacity assessment, Dr. Swallow found Claimant could perform simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, cannot relate to the general public, and can adapt to a work situation. (Tr. 625).

On the same date, Dr. Swallow also completed a Psychiatric Review Technique form on Claimant. She found Claimant suffered from moderate limitations in the activities of daily living, in difficulties in maintaining social functioning, and in difficulties in maintaining concentration, persistence, or pace. (Tr. 619). She diagnosed Claimant with affective disorders, anxiety-related disorders, and personality disorders. (Tr. 609).

Claimant first contends the ALJ should have included the moderate limitation in the area of the ability to work in coordination with or proximity to others without being distracted by them in his hypothetical questioning of the vocational expert. A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the hypothetical inquiries to the expert. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ is required to accept and include in the hypothetical question only those limitations supported by the record. Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999). The ALJ should have at least

addressed this limitation in his hypothetical questioning. <u>Miranda v. Barnhart</u>, 2005 WL 4888068, 5 (10th Cir. (Colo.)). On remand, the ALJ shall address this limitation in the record.

Claimant next states the state agency reviewers had inconsistencies in their opinions which the ALJ did not resolve. The nature of these alleged inconsistencies escapes this Court from multiple reviews of Claimant's brief. This Court finds no such error.

Claimant also asserts the ALJ failed to include all of her impairments in his RFC assessment and hypothetical questioning of the vocational expert. Specifically, the ALJ failed to include limitations in Claimant's use of her hands and degenerative disc disease. While Claimant complained of hand pain, the medical evidence does not indicate she was diagnosed with a condition which would serve as a further limitation upon her ability to work. (Tr. 265). The same can be said regarding Claimant's complaints of headaches, dizziness, fatigue, and poor sleep. The entirety of these conditions are self diagnosed by Claimant and not by medical professionals. Accordingly, the ALJ's failure to include these limitations does not constitute error.

Claimant contends the ALJ should have included her limitations in activities of daily living found by Dr. Swallow in her PRT in the hypothetical questioning of the vocational expert. The ALJ did

recognize these conditions but did not include them in the vocational expert questioning. (Tr. 20). On remand, the ALJ shall discuss and include these limitations in his hypothetical questioning.

## Credibility Analysis

Claimant argues the ALJ engaged in a faulty credibility analysis. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve

10

pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Although Claimant repeatedly accuses the ALJ of "miscasting the evidence," the ALJ's findings as to credibility are well-supported and sufficiently tied to the factual record. No error is attributed to the credibility determination.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent

with this Opinion and Order.

IT IS SO ORDERED this 22nd day of August, 2012.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE